UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VANG TER LOR,

                Petitioner,

                                    CASE NO. 05-CV-70357-DT

v.

                                    PAUL D. BORMAN

BLAINE LAFLER,                      UNITED STATES DISTRICT JUDGE

                Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Vang Ter Lor has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for assault with intent to commit murder and possession of a firearm during the commission of a felony (felony firearm). The Court has concluded for reasons given below that Petitioner's claims have no merit. The habeas petition, therefore, must be denied.

### I. Background

Petitioner was charged in Oakland County, Michigan with two counts of assault with intent to murder, MICH. COMP. LAWS § 750.83, and two counts of felony firearm, MICH. COMP. LAWS § 750.227b. The charges arose from allegations that Petitioner fired a gun at two houses in Pontiac, Michigan with intent to murder two acquaintances. A five-year old child was shot during the incident.

On April 4, 2002, at the age of seventeen, Petitioner pleaded guilty as charged to all four

counts of the criminal information.  Pursuant to *People v. Cobbs*, 443 Mich. 276; 505 N.W.2d 208 (1993), the parties and the trial court agreed to a sentence of two years in prison for the felony firearm convictions followed by a minimum sentence of not more than twelve years in prison for the assault convictions.[1]

On the date set for sentencing, Petitioner's attorney asked the trial court to adopt the *Cobbs* agreement.  The trial court then asked Petitioner whether there was anything he wanted to say.  Petitioner responded that he wanted to withdraw his plea.  The trial court held a brief bench conference and then sentenced Petitioner to two years in prison for the felony firearm convictions and to a consecutive term of twelve to thirty years in prison for the assault convictions.

A year after Petitioner pleaded guilty, he filed a written motion to withdraw his plea.  The trial court denied his motion.  Petitioner raised his habeas claims in a subsequent application for

---

[1]  The Michigan Supreme Court approved the following procedures in *Cobbs:*

At the request of a party, and not on the judge's own initiative, a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.

To avoid the potential for coercion, a judge must not state or imply alternative sentencing possibilities on the basis of future procedural choices, such as an exercise of the defendant's right to trial by jury or by the court.

The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources.  However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*Cobbs*, 443 Mich. at 283; 505 N.W.2d at 212 (footnote omitted) (emphasis in original).

2

leave to appeal.  The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Lor*, No. 248833 (Mich. Ct. App. July 18, 2003).  On March 12, 2004, the Michigan Supreme Court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed. . . ." *People v. Lor*, 469 Mich. 1020; 678 N.W.2d 439 (2004) (table).

Petitioner submitted his habeas corpus petition on January 27, 2005.  His grounds for relief read:

> I.    Petitioner was denied constitutional right to due process of law due to the court's failure to comply with MCR 6.3[10] regarding the withdrawal of plea before acceptance or sentence.

> II.   Denial of effective assistance of his trial counsel.

Respondent argues in an answer to the habeas petition that Petitioner's first claim does not state a federal claim on which habeas corpus relief can be granted and his second claim lacks merit.

## II.  Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

3

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

## III.  Discussion

### A.  Denial of Petitioner's Motion to Withdraw his Guilty Plea

The first habeas claim alleges that Petitioner was denied his constitutional right to due process of law and his rights under state law when the trial court denied his oral motion to withdraw his guilty plea.

### 1.  Failure to Comply with the Michigan Court Rules

Petitioner alleges that the trial court failed to comply with Michigan Court Rule 6.310(B), which read at the time:

> **(B)  Withdrawal Before Sentence**.  On the defendant's motion or with the defendant's consent, the court in the interest of justice may permit an accepted plea to be withdrawn before sentence is imposed unless withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea.  If the defendant's motion is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if it would be required by MCR 6.311(B).

Petitioner asserts that the trial court barely acknowledged his motion to withdraw his guilty plea and proceeded to sentence him without making any inquiry under Rule 6.310(B).

4

The alleged violation of state law is not a basis for habeas corpus relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A federal court may grant the writ of habeas corpus only if the petitioner demonstrates that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). It simply "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Consequently, Petitioner has no right to habeas corpus relief on the ground that the trial court failed to comply with Michigan Court Rule 6.310(B).

## 2. The Due Process Claim

Petitioner alleges that his guilty plea was not voluntarily and knowingly made, because he did not understand the plea proceeding or the rights he was waiving and he misapprehended the likely consequences of pleading guilty. Because a guilty plea involves a waiver of constitutional rights, it must be a voluntary and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Courts look to all the relevant circumstances surrounding the plea when determining whether a plea was entered voluntarily. *Id.* at 749. "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charge against him." *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)), *superseded on other grounds, United States v. Smith*, 36 F.3d 490 (6th Cir. 1994).

However,

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.  A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady*, 397 U.S. at 757.  Guilty pleas must be "accorded a great measure of finality," and "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 71, 74 (1977).

Although Petitioner claims that he did not understand the plea proceedings, he assured the trial court that he could hear and understand the trial court and his attorney.  He also assured the court that he understood he was pleading guilty to assault with intent to commit murder and felony firearm.  (Tr. Apr. 4, 2002, at 3.)

As for the consequences of his plea, Petitioner said that he understood the maximum sentence on the assault charges was life imprisonment or any term of years and that the two-year sentence for the felony firearm convictions would run consecutively to the sentence imposed for the assaults.  The trial court explained the *Cobbs* agreement (a two-year sentence for the felony firearm convictions followed by a minimum sentence of twelve additional years for the assault convictions), and Petitioner verified that there was no agreement to reduce or to dismiss any charge.  (*Id*. at 3-4.)

The trial court explained the rights that Petitioner was waiving by pleading guilty, and Petitioner stated that he understood them.  The trial court articulated those rights as the right to: (1) an attorney and appointment of counsel if he could not afford to hire an attorney; (2) a jury or nonjury trial; (3) the presumption of innocence until the prosecutor proved his guilt beyond a reasonable doubt; (4) the appearance of witnesses against him and the right to subject those

6

witnesses to cross-examination; and (5) an order compelling his own witnesses to appear.  The trial court explained that Petitioner also had a right to testify at trial or to remain silent and not have his silence used against him.  Petitioner acknowledged that, if the trial court accepted his guilty plea, he would not have a trial, he would be forfeiting his constitutional rights, and he could not claim that his plea was the result of promises and threats that were not disclosed to the court.  He claimed to know that a guilty plea is a conviction and that it could be used against him in the future.  He agreed with the trial court that his plea could affect probation or parole status and that any appeal would be by application for leave to appeal and not by right.  Finally, he asserted that it was his choice to plead guilty and that no one had threatened him to make him plead guilty.  He even provided a factual basis for his plea by acknowledging that he shot a gun into two houses with intent to commit murder.  (*Id*. at 4-6.)

The record belies Petitioner's allegations that he did not understand the proceedings, the rights he was waiving, or the likely consequences of his guilty plea.  Therefore, the state appellate court's conclusion that Petitioner's claims lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

### B.  Assistance of Counsel

The second and final habeas claim alleges that Petitioner was denied effective assistance of trial counsel.  Specifically, Petitioner claims that his attorney (1) erroneously advised him to plead guilty to offenses that he did not intend to commit, (2) failed to explain the State's burden of proof and the constitutional rights he was waiving, (3) abandoned him at sentencing when he tried to withdraw his plea, and (4) failed to address inaccurate sentencing information.

To prevail on his claim, Petitioner must establish that his attorney's performance was

7

deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id*. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

To establish the prejudice prong of the Strickland test, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

In guilty plea cases, a habeas petitioner must show that counsel's representation fell below an objective standard of reasonableness or outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). The petitioner must also show that defense counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. This standard requires demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

### 1.  The Plea

#### a.  Counsel's Advice

Petitioner alleges that his attorney advised him to plead guilty to offenses that he did not intend to commit. A detective, however, testified at the preliminary examination that Petitioner confessed to the police that he committed both shootings and acted alone. Petitioner admitted that he used two firearms and that he was trying to shoot Kong Lee at one location and Johnny Herr at another location due to a confrontation with one of those individuals at school. (Tr. Mar. 21, 2002, at 48-49 and 52-53.) Petitioner himself informed the trial court at his plea that he had intended to commit the crime of murder when he fired a gun into the two houses. (Tr. Apr. 4, 2002, at 6.) Thus, the record does not support Petitioner's contention that he did not intend to commit the offenses for which he was convicted. In addition, Petitioner has not alleged that, but for his attorney's advice, he would have insisted on going to trial.

### b. Counsel's Alleged Failure to Explain

Petitioner alleges that his trial attorney failed to explain the prosecutor's burden of proof and the constitutional rights he would be waiving by pleading guilty. Contrary to this allegation, defense counsel stated at the plea that he had discussed Petitioner's rights with him and Petitioner was prepared to offer a plea of guilty. (*Id.* at 2-3.). Moreover, as noted above, the trial court explained the prosecutor's burden of proof and the constitutional rights that Petitioner was waiving. (*Id.* at 4-6.) The trial court's proper colloquy with Petitioner cured any misunderstanding that Petitioner may have had about the consequences of his plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).

### 2. At Sentencing

### a. Abandonment

Petitioner alleges that his attorney did nothing when he moved to withdraw his guilty plea at the sentencing. The sentencing record indicates that, when the trial court asked Petitioner whether he had anything to say, Petitioner responded, "Yea. I want to take my plea back." Petitioner went on to say that he did not understand the pretrial and trial "steps." When the trial court asked Petitioner to clarify what he meant, Petitioner stated that he had not understood what he was facing. Defense counsel then addressed the trial court by saying,

> Your Honor, I'm satisfied he speaks English very well. I went over it very carefully with him, the first day I met him to make sure that there was no language problem. He was born in the United States. He's gone to school all his life in the Untied States. This is the first time I'm hearing of any issue of not understanding.

(Tr. May 3, 2002, at 4-5.) A short bench conference followed. The trial court then proceeded to announce the sentence. The court said that it was convinced Petitioner had knowingly and voluntarily entered his plea and that there was no reason not to follow the *Cobbs* agreement and no reason not to proceed with the sentencing. (*Id*. at 5-6.)

The record does not reveal what was said during the bench conference, but Petitioner admits that his attorney asked for an opportunity to confer with him. Furthermore, defense counsel's failure to argue in favor of withdrawing the guilty plea can be deemed a strategic decision. The minimum sentence under the sentencing guidelines was nine to fifteen years for the assault convictions (Tr. Apr. 4, 2002, at 2). The *Cobbs* agreement called for a minimum sentence of no more than twelve years for the assault convictions. If Petitioner had been sentenced following a trial at which he was found guilty as charged, he could have been sentenced to two years for the felony firearm convictions and up to life imprisonment for the assault convictions. *See* MICH. COMP. LAWS § 750.83; MICH. COMP. LAWS § 750.227b(1).

10

There is a strong likelihood that Petitioner would have been convicted, because he confessed to the police after being advised of his constitutional rights and waiving those rights. (Tr. Mar. 21, 2002, at 48-51.) The Court concludes that defense counsel was not ineffective for failing to support Petitioner's oral request to withdraw his plea.

### b. Failure to Challenge the Pre-sentence Information

Petitioner's final allegation about defense counsel is that the attorney failed to correct inaccurate sentencing information. Petitioner has not explained what information was incorrect. He alleged in his state appellate brief that his attorney should have objected to (1) inaccurate references to gang activity in the pre-sentencing report and (2) the scoring of three offense variables, which were used to establish a sentencing guideline range.

The record indicates that defense counsel *did* attempt to set the record straight on the matter of gang activity. The attorney pointed out to the trial court that, although the police thought the crimes may have been gang related, Petitioner had informed counsel that he did not belong to a gang. (Tr. May 3, 2002, at 3.) Thus, Petitioner's allegation about counsel's failure to object to inaccurate information in the pre-sentence report has no basis in fact.

Defense counsel did not challenge the scoring of the sentencing guidelines. However, there was evidence to support the scoring of offense variables 4 and 5 (psychological injury to the victim and the victim's family). And although the State conceded a ten-point error in scoring offense variable 17, a ten-point reduction in the total score for the offense variables did not place Petitioner in a different level. *See* People's Answer in Opposition to Defendant's Motion to Withdraw Plea, Oakland County Circuit Court No. 02-183506 FC. Thus, correcting the score for the offense variables would not have made a difference in the sentencing guidelines score. (Tr.

11

May 14, 2003, at 4.)

### 3.  Summary

Petitioner has not shown that his attorney's performance was deficient and that the deficient performance prejudiced him.  Therefore, the state court's conclusion that Petitioner's claims had no merit was not objectively unreasonable, and Petitioner has no right to habeas relief on the basis of his ineffective-assistance-of-counsel claim.

### IV.  Conclusion

For all the reasons given above, the Court concludes that Petitioner is not entitled to habeas corpus relief.  Accordingly, the application for the writ of habeas corpus [Doc. #1, Feb. 1, 2005] is DENIED.  The Court DECLINES to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).


S/Paul D. Borman

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 18, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 18, 2006.

S/Jonie Parker

Case Manager

12